UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JOE HENRY SCOTT, III,

    Plaintiff,

v.                                      Case No. 3:19-cv-03539-RV-HTC

ESCAMBIA COUNTY SHERIFF'S
OFFICE, MEGAN KEARNS, and
SERGEANT JOHNSON,

    Defendants.
_____/

REPORT AND RECOMMENDATION

Plaintiff, proceeding *pro se* and *in forma pauperis*, initiated this action by filing a civil rights complaint under 42 U.S.C. § 1983. ECF Doc. 1. On October 1, 2019, the Court issued an order finding that Plaintiff's complaint failed to state a facially plausible claim for relief and giving Plaintiff twenty-one (21) days to file either a notice of voluntary dismissal or an amended complaint. ECF Doc. 4. On October 21, 2019, Plaintiff filed an amended complaint. ECF Doc. 5. The amended complaint is virtually identical to the initial complaint, except that Plaintiff adds "[t]his is facially plausible" to the statement of facts. ECF Doc. 5 at 3. After

reviewing Plaintiff's amended complaint, the undersigned recommends that Plaintiff's case be dismissed for failure to state a claim for relief.[1]

## I. The Complaint

Plaintiff's amended complaint names four (4) Defendants: Captain David Morgan, Sergeant Shedrick Johnson, Officer Meagan Kearns, and Officer Meghan Stearns.[2] ECF Doc. 5 at 2. The crux of Plaintiff's complaint is that he was falsely arrested for "misuse of 911," and that, once in jail, he failed to receive needed medical treatment. *Id.* at 4. The amended complaint sets forth the following factual allegations.

On August 18, 2018, Plaintiff called 911 to report his loss of two hundred and twenty-seven dollars ($227.00), which he alleges was stolen from him on the bus. *Id.* at 5. Officer Kearns arrived and told Plaintiff she would file a report. *Id.* While filing the report, Officer Kearns asked Plaintiff for his address and phone number. *Id.* Plaintiff told her his phone was not on and he "could only dial 911 without web or wifi." *Id.* Officer Kearns then refused to file a report. *Id.*

Then, Plaintiff called 911 again and asked for a sergeant, and Sergeant Johnson arrived. *Id.* Plaintiff "explain[ed] to him what happened" and Sergeant

---

[1] This action has been referred to the undersigned Magistrate Judge for preliminary screening pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).
[2] Although Plaintiff identifies the Escambia County Sheriff's Office in the case style of his amended complaint, he does not identify the ECSO in the listing of defendants. Additionally, as this Court advised him in its Order at ECF Doc. 4, the ECSO is not subject to suit under section 1983.

Johnson "screamed at Plaintiff and took [Officer Kearns's] side." *Id.* Both Officer Kearns and Sergeant Johnson refused to file a report, and they told Plaintiff to go to the Escambia County Police Office. *Id.* Plaintiff began walking to the police office, but it was "super hot and [Plaintiff has] high blood pressure, depression disorder. [He] got so made [sic] that started getting dizzy and sick[,]" so he called 911 a third time and asked for a second sergeant. *Id.*

When Plaintiff arrived at the police office, it was closed, and he called 911 a fourth time. *Id.* A second sergeant arrived who Plaintiff did not speak with at all, and Sergeant Johnson ran over to Plaintiff. *Id.* Plaintiff knew Sergeant Johnson would not help him, and Sergeant Johnson was so "nasty" to Plaintiff that his "pressure when [sic] up again," so he called 911 a fifth time to ask for an ambulance. *Id.* However, the 911 operator hung up on him before he had a chance. *Id.* Sergeant Johnson said, "If your [sic] on the phone with 911 operater [sic], I'm take [sic] you to jail." *Id.* Plaintiff responded, "I'm on the phone with 911[,]" so Sergeant Johnson arrested him. *Id.*

Plaintiff alleges Sergeant Johnson snatched his arm, walked him to the police car, and "started illegal searching [him]" and "touching [his] body." *Id.* Officer Kearns and Officer Stearns then searched Plaintiff's bags, which contained his "hair because [he] was brading [sic] it[,]" "sperm from a condom[,]" and "a beer[,]" which the officers misplaced. *Id.* Officer Kearns then took Plaintiff to jail, but they would

not admit him because of his high blood pressure, so she drove him to the hospital and told him he would "have a warrant for [his] arrest put in Monday." *Id.* at 5-6.

On September 11, 2018, the police arrested Plaintiff and took him to jail, where he remained for 90 days. *Id.* at 6. While in jail, Plaintiff alleges he begged the medical and mental health department to give him his medication, and they refused, causing him to suffer "great deals of stress, anxiety, depression, feeling unsafe, worries" and headaches. *Id.* After 90 days, "the case was nolle prosequil [sic]." *Id.*

## II. Legal Standard

Because Plaintiff is proceeding *in forma pauperis* and seeking relief against governmental defendants, the Court must screen the amended complaint and dismiss it if it is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). The Court must read Plaintiff's *pro se* allegations in a liberal fashion. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Dismissals for failure to state a claim are governed by the same standard as Federal Rule of Civil Procedure 12(b)(6). *See Mitchell v. Farcass*, 112 F.3d 1483, 1485 (11th Cir. 1997).

To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its fact." *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009). To state a plausible claim for relief, plaintiffs must go beyond merely pleading the sheer possibility of unlawful activity by a defendant; plaintiffs must offer factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*

### III.   Discussion

As an initial matter, the relief Plaintiff seeks – to issue subpoenas to the Escambia County Sheriff's Office and Escambia County Jail -- is a request for discovery, which is premature and not proper at this time. Plaintiff is not entitled to discovery because he has not alleged any claims against the Defendants that would be recognized under the law. First, Plaintiff does not have a claim for false arrest because there was probable cause for his arrest. Second, Plaintiff does not have a claim for illegal search and seizure because only his person was searched and the search was incident to the arrest. Third, Plaintiff does not have a claim for deliberate indifference because he does not allege any facts showing a serious medical need or deliberate disregard for that need. Fourth, Plaintiff does not allege any facts against Defendant Morgan sufficient to state a claim for supervisory liability.

### A.   False Arrest

As set forth above, the Officer Defendants arrested Plaintiff for misusing 911. Although a warrantless arrest without probable cause violates the Constitution and provides a basis for a section 1983 claim, the existence of probable cause at the time

of arrest constitutes an absolute bar to a section 1983 action for false arrest. *Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir. 2004) (citing *Marx v. Gumbinner*, 905 F.2d 1503, 1505-06 (11th Cir. 1990)). "For probable cause to exist, … an arrest must be objectively reasonable based on the totality of the circumstances." *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002) (citation omitted); *see also Whren v. United States*, 517 U.S. 806, 813 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.").

Under Florida Statute § 365.172(14), "[a]ny person who accesses the number 911 for the purpose of making a false alarm or complaint or reporting false information that could result in the emergency response of any public safety agency [or] who knowingly uses or attempts to use such service for a purpose other than obtaining public safety assistance… commits a misdemeanor of the first degree." *Id.* Plaintiff called 911 at least twelve (12) times on the day of his arrest and was on a call with 911 at the time of his arrest.[3] Furthermore, on September 12, 2018, the county circuit court judge determined that probable cause existed to arrest Plaintiff. *See Florida v. Scott*, 2018 MM 005623.[4] Such determination is conclusive evidence of probable cause in a subsequent action for malicious prosecution, absent fraud or

---

[3] Although Plaintiff's allegations discuss only five (5) instances in which he called 911, Plaintiff provided the Court with his 911 call history record for August 18, 2018, which indicates he called 911 twelve (12) times. ECF Doc. 5 at 20.
[4] Available at http://74.174.28.52/BMWebLatest/Home.aspx/Search.

Case No. 3:19-cv-03539-RV-HTC

other corrupt means employed by the person initiating the prosecution. *See Ware v. U.S.*, 971 F.Supp.2d 1441, 1463 (M.D. 1997) (citing *Colonial Stores, Inc. v. Scarbrough*, 355 So.2d 1181, 1184 (Fla. 1977)).

Furthermore, because the Officer Defendants were acting within the scope of their discretionary authority, they are insulated from liability if they had "arguable probable cause" for Plaintiff's arrest. *See Poulakis v. Rogers*, 341 F. App'x 523, 526 (11th Cir. 2009) ("[W]hen an officer violates the Constitution because he lacked probable cause to make an arrest, the officer's conduct may still be insulated under the second prong of qualified immunity *if* he had 'arguable probable cause' to make the arrest.") (citation omitted). "Arguable probable cause may be found where 'reasonable officers in the same circumstances and possessing the same knowledge as the Defendant could have believed that probable cause existed to arrest.'" *Id.* at 527 (quoting *Lee*, 284 F.3d at 1195). Given the number of times Plaintiff called 911, the fact that Plaintiff was warned not to call 911 again, and that there was, indeed, no emergency, reasonable officers in the same circumstances as Defendants could have believed there was probable cause to arrest Plaintiff.

Although Plaintiff alleges he was illegally incarcerated for this offense because he was "later on found not guilty" by the circuit court (ECF Doc. 5 at 4), this is not true as Plaintiff's complaint was *nolle prossed*.[5] Regardless, whether an

---

[5] Plaintiff acknowledges later in his complaint that the case was *nolle prossed*. ECF Doc. 5 at 6.

arrest is lawful is not dependent on the final disposition of the case, but on whether probable cause existed at the time of the arrest.

B.   Search and Seizure

Because Plaintiff failed to establish false arrest, he also fails to establish unreasonable search and seizure. *See Beck v. Ohio*, 379 U.S. 89, 90 (1964) (holding a warrantless search is not unreasonable if it is incident to a lawful arrest.). "It is well settled that a search incident to a lawful arrest is a traditional exception to the warrant requirement of the Fourth Amendment. This general exception has historically been formulated into two distinct propositions. The first is that a search may be made of the person of the arrestee by virtue of the lawful arrest. The second is that a search may be made of the area within the control of the arrestee." *U.S. v. Robinson*, 414 U.S. 218, 224 (1973). Plaintiff alleges that he (the person of the arrestee) and his bags (an area within his control) were searched by Defendants Kearns and Stearns. Thus, although there are limits to the permissible scope of a warrantless search incident to a lawful arrest, Plaintiff fails to allege facts sufficient to infer that that scope was exceeded here.

C.   Inadequate Medical Care

Plaintiff alleges that his rights were violated during his incarceration because he "begged" the medical and mental health department for medication, and their refusal caused him to suffer numerous ailments. Thus, as an initial matter, his claims

fail as to these Defendants because there are no allegations that they were medical professionals or worked in the medical health department. Regardless, the undersigned will address the other reasons why Plaintiff's claim fails, even if he had identified the correct defendants.

Claims for failure to provide medical care or a delay in providing medical care as to pretrial detainees are governed by the Fourteenth Amendment. *See Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996) ("Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners. … However, the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving arrestees or pretrial detainees.") (citations omitted).

To prevail on a Fourteenth Amendment claim, a plaintiff "must satisfy both an objective and a subjective inquiry. First, [he] must prove an objectively serious medical need. Second, [he] must prove that the [government] official acted with deliberate indifference to that need." *Andujar v. Rodriguez,* 486 F.3d 1199, 1203 (11th Cir. 2007) (citations omitted). An objectively serious medical need is "one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (quotations omitted). It is one that "if left unattended, poses

a substantial risk of serious harm" and can be either: (1) "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention"; or (2) one where "a delay in treating the need worsens the condition." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1307 (quotation marks omitted); *see also Danley v. Allen,* 540 F.3d 1298, 1310–11 (11th Cir. 2008).  Although not all pain constitutes a serious medical need, failing to treat pain can violate the Fourteenth Amendment.  *Danley,* 540 F.3d at 1311.

Plaintiff fails to allege facts sufficient to meet either the objective or subjective elements of his claim as to the named Defendants.  Plaintiff alleges that "in [my] grievance to the medical, [and] mental health department in the jail.  I begged them to give me my meds and they refused.  I suffered great deals of stress, anxiety, depression, feeling unsafe, worries, back of my head hurt every day.  And migraines in the front all day." ECF Doc. 5 at 6.  These allegations do not show that Plaintiff had an objectively serious medical need.  *See Young v. Hernando Cty. Sheriff's Dept.*, 2009 WL 62886, *3 (M.D. Fla. Jan. 8, 2009) (allegations that plaintiff had visible bleeding and bruising without more is insufficient to survive dismissal on Fourteenth Amendment deliberate indifference claim).  Plaintiff does not allege that he has been diagnosed with a serious condition requiring treatment.  *See id*.  Plaintiff does not allege the delay in receiving treatment worsened his condition.  *See id.*

As for the subjective component of a claim under the Fourteenth Amendment for deliberate indifference, Plaintiff must state facts supporting the following three elements: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence." *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004). Here, Plaintiff does not allege any facts showing that the named Defendants were actually aware Plaintiff was in serious medical need. There are no allegations that the named Defendants were aware he had feelings of stress or anxiety or that he had headaches. Indeed, his allegations are limited to what he wrote in his grievance and there is no allegation these Defendants were aware of Plaintiff's grievance. Regardless, the mere denial of medication to someone who asks does not establish deliberate indifference. *See Goodman v. Kimbrough*, 718 F.3d 1325, 1332 (11th Cir. 2013) ("[T]he deliberate indifference standard – and the subjective awareness required by it – is far more onerous than normal tort-based standards of conduct sounding in negligence").

D. <u>Supervisory Liability</u>

Plaintiff names Defendant Captain David Morgan as a defendant and seeks to hold him liable as a supervisor. Supervisors can be held "liable under... § 1983, for the unconstitutional acts of [their] subordinates [only] if [they] personally participated in the allegedly unconstitutional conduct or if there is a causal connection between [their] actions... and the alleged constitutional deprivation."

*Douglas v. Yates,* 535 F.3d 1316, 1322 (11th Cir. 2008) (quotation marks omitted). A plaintiff can only establish a causal connection by showing that: (1) "a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation and he fail[ed] to do so"; (2) "the supervisor's improper custom or policy le[d] to deliberate indifference to constitutional rights"; or (3) "facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Id.*

Here, Plaintiff alleges no facts which suggest that Defendant Morgan personally participated in any unconstitutional conduct. He alleges only that "Sheriff David Morgan is head of the [Sheriff's] Office. He has allowed these actions to take place without fixing them." To the extent Plaintiff seeks to hold Defendant Morgan liable for his supervisory position, Plaintiff's claim for supervisory liability fails. First, the undersigned has already determined that Plaintiff's complaint fails to state a claim for a constitutional violation, which necessarily negates any claim for supervisory liability. Regardless, Plaintiff's complaint does not contain any factual allegations against Defendant Morgan that could be reasonably read as showing that he personally participated in any constitutional violation or directed others to do so. Moreover, Plaintiff has not

alleged facts showing the existence of a custom or policy or history of widespread abuse.

Therefore, based on the allegations set forth in Plaintiff's amended complaint, the undersigned finds that Plaintiff has failed to state an actionable claim against these Defendants. Additionally, since Plaintiff has already had an opportunity to amend his complaint to state a cause of action and failed to do so, the undersigned finds that further amendments would be futile.

Accordingly, it is respectfully RECOMMENDED:

1. That Plaintiff's amended complaint (ECF Doc. 5) be DISMISSED for failure to state a claim on which relief may be granted.

2. That the clerk be directed to close this file.

DONE this 28th day of October, 2019.

*s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u> A copy of objections shall be served upon the Magistrate Judge and all other parties. A party failing to object to a Magistrate Judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.